**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOSEPH CHEENEY, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | HON. |
| v. | |
| FIVE STAR PIZZA CO., INC.; 5 STAR PIZZA, LLC; DEFT BROTHERS, LLC; E.R.A. PIZZA LLC; EAT PIZZA, and ERIC ARNTSON, | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

### I.    INTRODUCTION

1.    Joseph Cheeney, on behalf of himself and all similarly-situated individuals, brings this action against Defendants Five Star Pizza Co., Inc., 5 Star Pizza LLC, Deft Brothers, LLC, E.R.A Pizza LLC, Eat Pizza LLC,  and Eric Arntson. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and M.C.L. §408.414.

2.    Defendants operate at least approximately 9 pizza restaurants in the Lansing, Michigan area.

3.     Defendants have repeatedly and willfully violated the Fair Labor Standards Act and the Workforce Opportunity Wage Act, M.C.L. §408.414, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

4.     All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.     All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.     Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L. §408.414.

## II.    JURISDICTION AND VENUE

8.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Michigan law claims.

10.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## III.    PARTIES

**Plaintiff**

11.    Plaintiff Joseph Cheeney resides in Lansing, Michigan. Further, at all times material herein, Plaintiff worked within the boundaries of the Western District of Michigan.

12.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the M.C.L. §408.414.

13.    Plaintiff has given written consent to join this action. (Exhibit 1).

**Defendants**

14.    Defendants have jointly employed Plaintiff and similarly situated delivery drivers at all times relevant.

15.    Each of the Defendants had substantial control over Plaintiff and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

16.    Defendants are part of a single integrated enterprise.

17.    At all relevant times, the restaurants shared common management and were centrally controlled and/or owned by Five Star Pizza.

18.    At all relevant times, all Defendants maintained control over labor relations at the Five Star Pizza restaurants.

19.    During all relevant times, Defendants permitted employees to transfer or be shared by and between the Five Star Pizza restaurants without retraining.

3

20.    Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated delivery drivers at the Five Star Stores.

21.    Defendants suffer or permit Plaintiff and other delivery drivers to work.

22.    Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers, and also exercise that authority.

23.    During all relevant times, Defendants also exercised operational control over the delivery drivers at the Five Star Pizza stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**Five Star Pizza Co., Inc.**

24.    Defendant Five Star Pizza Co., Inc. is a Michigan corporation with its principal place of business located in the Western District of Michigan.

25.    Eric Arntson is the owner and operator of Five Star Pizza Co., Inc. since 1999.

26.    Five Star Pizza Co., Inc. is the corporate entity that appears on Plaintiff's paystubs for work he completed for Defendants.

27.    Five Star Pizza Co., Inc. owns and operates approximately 9 Domino's restaurants in the Lansing, Michigan area.

4

28.    Five Star Pizza Co., Inc. operates out of its headquarters at 7600 N. Scott Rd., St. Johns, Michigan 48879.

29.    Five Star Pizza Co., Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30.    Upon information and belief, Five Star Pizza Co., Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

31.    Five Star Pizza Co., Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

32.    At all relevant times, Five Star Pizza Co., Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

33.    Five Star Pizza Co., Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

34.    At all relevant times, Five Star Pizza Co., Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.    Five Star Pizza Co., Inc.'s gross revenue exceeds $500,000 per year.

**5 Star Pizza LLC**

36.    Defendant 5 Star Pizza LLC is a Michigan limited liability corporation with its principal place of business located in the Western District of Michigan.

37.    5 Star Pizza LLC was incorporated by Eric Arntson, who also serves as 5 Star Pizza's agent.

38.    5 Star Pizza LLC operates out of its headquarters at 7600 N. Scott Rd., St. Johns, Michigan 48879.

39.    5 Star Pizza LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

40.    Upon information and belief, 5 Star Pizza LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

41.    5 Star Pizza LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

42.    At all relevant times, 5 Star Pizza LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

43.    5 Star Pizza LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

44.    At all relevant times, 5 Star Pizza LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

45.    5 Star Pizza LLC's gross revenue exceeds $500,000 per year.

**Deft Brothers, LLC**

46.    Defendant Deft Brothers, LLC is a limited liability corporation with its principal place of business incorporated in the Western District of Michigan.

47.    Deft Brothers, LLC was incorporated by Eric Arntson, who also serves as Deft Brother LLC's statutory agent.

48.    Deft Brothers, LLC operates out of its headquarters at 7600 N. Scott Rd., St. Johns, Michigan 48879.

49.    Deft Brothers, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

50.    Upon information and belief, Deft Brothers, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

51.    Deft Brothers, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

52.    At all relevant times, Deft Brothers, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to,

7

hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

53.    Deft Brothers, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

54.    At all relevant times, Deft Brothers, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

55.    Deft Brothers, LLC's gross revenue exceeds $500,000 per year.

**E.R.A. Pizza LLC**

56.    Defendant E.R.A. Pizza LLC is a limited liability corporation with its principal place of business located in the Western District of Michigan.

57.    E.R.A. Pizza LLC was incorporated by Eric Arntson, who also serves as E.R.A's statutory agent.

58.    E.R.A. Pizza LLC operates out of its headquarters at 7600 N. Scott Rd., St. Johns, Michigan 48879.

59.    E.R.A Pizza LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

60.    Upon information and belief, E.R.A. Pizza LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

61.    E.R.A. Pizza LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

62.    At all relevant times, E.R.A. Pizza LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

63.    E.R.A. Pizza LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

64.    At all relevant times, E.R.A. Pizza LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

65.    E.R.A. Pizza LLC's gross revenue exceeds $500,000 per year.

**Eat Pizza LLC**

66.    Defendant Eat Pizza LLC is a limited liability corporation with its principal place of business located in the Western District of Michigan.

67.    Eat Pizza LLC was incorporated by Eric Arntson, who also serves as Eat Pizza LLC's statutory agent.

68.    Eat Pizza LLC operates out of its headquarters at 7600 N. Scott Rd., St. Johns, Michigan 48879.

69.    Eat Pizza LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

70.    Upon information and belief, Eat Pizza LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

71.    Eat Pizza LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

72.    At all relevant times, Eat Pizza LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

73.    Eat Pizza LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

74.    At all relevant times, Eat Pizza LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

75.    Eat Pizza gross revenue exceeds $500,000 per year.

**Eric Arnston**

76.    Eric Arnston is the owner and operator of Five Star Pizza.

77.    Eric Arntson has been the owner and operator of Five Star Pizza since 1990.

78.    Eric Arnston is the owner of Five Star Pizza Co., Inc.

79.    Eric Arnston is the owner of 5 Star Pizza LLC.

80.    Eric Arnston is the owner of Deft Brothers, LLC.

10

81.    Eric Arnston is the owner of E.R.A. Pizza LLC.

82.    Eric Arnston is the owner of Eat Pizza LLC.

83.    Eric Arnston is individually liable to Five Star Pizza's  delivery drivers under the definitions of "employer" set forth in the FLSA and M.C.L. §408.414 because he owns and operates Five Star Pizza's stores, serves as a manager of Five Star Pizza, ultimately controls significant aspects of Five Star Pizza's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

84.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had financial control over the operations at each of the Five Star Pizza stores.

85.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has a role in significant aspects of the Five Star Pizza's day to day operations.

86.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had control over Five Star Pizza's pay policies.

87.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had power over personnel and payroll decisions at the Five Star Pizza stores, including but not limited to influence of delivery driver pay.

88.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had the power to hire, fire and discipline employees, including delivery drivers at Five Star Pizza's stores.

89.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had the power to stop any illegal pay practices that harmed delivery drivers at the Five Star Pizza's stores.

90.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had the power to transfer the assets and liabilities of Five Star Pizza.

91.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had the power to declare bankruptcy on behalf of Five Star Pizza.

92.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston has had the power to enter into contracts on behalf of each of the Five Star Pizza's stores.

93.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Anston has had the power to close, shut down, and/or sell each of the Five Star Pizza's stores.

94.    At all relevant times, by virtue of his role as owner and operator of Five Star Pizza, Eric Arnston had authority over the overall direction of each of Five Star Pizza's stores and was ultimately responsible for their operations.

95.    The Five Star Pizza stores function for Eric Arnston's profit.

96.    Eric Arnston has influence over how the Five Star Pizza's stores can run more profitably and efficiently.

12

**Doe Corporation 1-10**

97.    Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Michigan law.

98.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## IV.    FACTS

### Class-wide Factual Allegations

99.    During all relevant times, Five Star Pizza operated approximately 9 Domino's Pizza Stores (the "Five Star Pizza stores").

100.    The primary function of the Five Star Pizza stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

101.    The Five Star Pizza stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

102.    Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Five Star Pizza stores.

103.    All delivery drivers employed at the Five Star Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

104.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Five Star Pizza stores building pizza boxes, cleaning,

13

preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

105.    At all relevant times, Plaintiff and similarly situated delivery drivers have been an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

106.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

107.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

108.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

109.    The Five Star Pizza stores do not keep track of their delivery drivers' actual expenses.

110.    The Five Star Pizza stores do not reimburse delivery drivers for their actual expenses.

111.    The Five Star Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

112.    At all relevant times, Plaintiff and other similarly situated delivery drivers at the Five Star Pizza stores were reimbursed a flat per delivery amount for the expenses they incurred.

113.    Plaintiff and similarly situated delivery drivers typically average at least three to four miles per round-trip delivery.

114.    Plaintiff and similarly situated delivery drivers typically make at least two deliveries per hour.

115.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

     a.  2015: 57.5 cents/mile
     b.  2016: 54 cents/mile
     c.  2017: 53.5 cents/mile
     d.  2018: 54.5 cents/mile

116.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA and Michigan law.

117.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Five Star Pizza stores.

118.    All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

119.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable

underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

120.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

121.    When Plaintiff's tips plus wages did not equal full minimum wage, Defendants failed to pay Plaintiff and similarly situated delivery drivers the difference between the amount paid and full minimum wage.

122.    Defendants have willfully failed to pay federal and Michigan state minimum wage to Plaintiff and similarly situated delivery drivers at the Five Star Pizza stores.

### Plaintiff's Individual Factual Allegations

123.    Plaintiff worked at Five Star Pizza stores from approximately 2014 until February 2018.

124.    Plaintiff worked or covered shifts at three of Defendants' Five Star Pizza stores, and was subject to the same compensation and reimbursement policies described herein at all three locations.

125.    Plaintiff was paid minimum wage as an hourly rate while working inside the store.

126.    Plaintiff was paid minimum wage minus a tip credit for the hours he worked completing deliveries.

16

127.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

128.    When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

129.    At all relevant times, Plaintiff received a flat per delivery reimbursement amount intended to cover his expenses.

130.    Plaintiff was reimbursed $1.10 per delivery.

131.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

132.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

133.    Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

134.    Defendants did not track the actual expenses incurred by Plaintiff.

135.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

136.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

137.    During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

138.    Plaintiff regularly makes approximately two to three deliveries per hour during the hours he works as a delivery driver.

139.    Plaintiff regularly drove approximately 4 miles round trip per delivery.

140.    Thus, Defendants' average effective reimbursement rate for Plaintiff was approximately $.275 per mile ($1.10 per delivery / 4 average miles per delivery).

141.    In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.27 ($.545 - $.275) per mile. Considering Plaintiff's estimate of about 4 average miles per delivery, Defendants under-reimbursed him about $1.08 per delivery ($.27 x 4 average miles).

142.    Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $2.70 per hour ($1.08 per delivery x 2.5 deliveries per hour).

143.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

144.    Additionally, when Plaintiff's wages plus tips did not equal minimum wage, Defendants did not pay him the difference.

## Collective Action Allegations

145.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Five Star Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

146.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

147.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

148.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

149.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

150.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

151.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

152.   The FLSA Collective members are readily identifiable and ascertainable.

153.   For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

154.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

155.   Plaintiff brings the Counts II and III under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Five Star Pizza stores in the State of Michigan between the date three years prior to the filing of this action and the date of final judgment in this matter ("Rule 23 Class").

156.   Excluded from Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

157.   The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

158.   For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from Defendants.

159.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

160.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

161.    There are more than 50 Rule 23 Class members.

162.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

163.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

164.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L. §408.414.

165.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

166.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

167.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

168.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

169.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

170.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

171.    Upon information and belief, Defendants and other employers throughout the state violate M.C.L. §408.414. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

172.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

173.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.   Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

    c.   Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    d.   Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

    f.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    g.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred; and

    h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

174.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## V.    CAUSES OF ACTION
### <u>Count 1</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

175.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

176.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

177.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

178.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

179.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

180.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

181.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### <u>Count 2</u>
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

182.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

183.   Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

184.   Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

185.   By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

186.   As a result of Defendants willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

<u>**Count 3**</u>
**Failure to Pay Minimum Wage – M.C.L. §408.414**
**(On Behalf of Plaintiff and Rule 23 Class)**

187.   Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

188.   Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

189.   The Michigan Workforce Opportunity Wage Act, M.C.L. §408.411, *et seq*. requires that employers be paid not less than minimum wage as determined by an inflation index (currently $9.25/hour) for all hours worked.

190.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and Rule 23 Class minimum wage.

191.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated M.C.L. §408.414.

192.    Under subsection (d) of M.C.L. §408.414, an employer must pay any shortfall if the tipped minimum wage rate plus gratuities falls below Michigan's minimum wage rate (currently $9.25 per hour).

193.    Defendants did not pay the shortfall when to Plaintiff and the Rule 23 Class when tipped minimum wage plus gratuities fell below Michigan's minimum wage rate.

194.    As a result of Defendants' violations, Plaintiff and Rule 23 Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to M.C.L. §408.419.

**WHEREFORE**, Plaintiff Joseph Cheeney prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.    A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, M.C.L. §408.411, *et seq*.

F.    An award of damages under M.C.L. §408.419, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, plus attorneys' fees and costs.

G.    An award of prejudgment and post-judgment interest.

H.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

MARKOVITS, STOCK & DeMARCO, LLC
Counsel for plaintiff and putative class

Dated: May 30, 2018          By:   */s/ Andrew Biller*
                                 Andrew Biller (0081452) (pro hac vice application forthcoming)
                                 Andrew Kimble (pro hac vice application forthcoming)
                                 Philip Krzeski (pro hac vice application forthcoming)

BUSINESS ADDRESS:
    3825 Edwards Road, Suite 650
    Cincinnati, OH  45209
    513-651-3700 (Phone)
    *abiller@msdlegal.com*
    *akimble@msdlegal.com*
    *pkrzeski@msdlegal.com*

27

-and-

BOS & GLAZIER, P.L.C.
*Co-Counsel for Plaintiff  and the putative class*

Dated: May 30, 2018          By:   */s/ Bradley K. Glazier*_____
                                   Bradley K. Glazier (P35523)
                                   Robert M. Howard (P80740)

BUSINESS ADDRESS:
     990 Monroe Avenue, N.W.
     Grand Rapids, MI  49503
     (616) 458-6814
     bglazier@bosglazier.com

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues herein triable to a jury.

MARKOVITS, STOCK & DeMARCO, LLC
Counsel for plaintiff and putative class

Dated: May 30, 2018      By:    */s/ Andrew Biller* _____
Andrew Biller (0081452) (pro hac vice application forthcoming)
Andrew Kimble (pro hac vice application forthcoming)
Philip Krzeski (pro hac vice application forthcoming)

BUSINESS ADDRESS:
3825 Edwards Road, Suite 650
Cincinnati, OH  45209
513-651-3700 (Phone)
abiller@msdlegal.com
akimble@msdlegal.com
pkrzeski@msdlegal.com

-and-

BOS & GLAZIER, P.L.C.
*Co-Counsel for Plaintiff  and the putative class*

Dated: May 30, 2018      By:    */s/ Bradley K. Glazier* _____
Bradley K. Glazier (P35523)

BUSINESS ADDRESS:
990 Monroe Avenue, N.W.
Grand Rapids, MI  49503
(616) 458-6814
bglazier@bosglazier.com